**MARCUS ZELMAN, LLC**
Yitzchak Zelman, Esq. (*pro hac vice to be filed*)
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
Office:  (732) 695-3282
Fax:  (732) 298-6256
Email:  yzelman@MarcusZelman.com

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel On Signature Page]

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETA TIKOTZKY, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>KAI DATA, LLC,<br><br>                    Defendant. | Case No.: 2:21-cv-00971<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ETA TIKOTZKY (hereinafter, "Plaintiff"), individually and on behalf of all others similarly situated, bring this Class Action Complaint (the "Complaint") against Defendant KAI DATA, LLC (hereinafter "Kai Data" or "Defendant"), and allege, upon personal knowledge as to Plaintiff's own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1. Plaintiff brings this class action Complaint against Defendant to secure redress because Defendant negligently or willfully violated the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA") and invaded Plaintiff's privacy by causing unsolicited phone calls and pre-recorded voice messages to be made to Plaintiff's and other class members' cellular telephones through the use of an auto-dialer.

2. Defendant made one or more unauthorized phone calls with pre-recorded voice messages to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") for the purpose of soliciting business from Plaintiff.

3. The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls and pre-recorded voice messages exactly like those alleged in this case.

4. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited calling and pre-recorded voice messaging activities, and an award of statutory damages to the members of the Classes (defined below).

## PARTIES

5. Plaintiff Eta Tikotzky is currently a citizen of New Jersey and currently resides in Ocean County, New Jersey.

6. Defendant Kai Data, LLC is and was at all relevant times a business entity duly formed under the laws of the State of Ohio with an office at 3814 West

Street, Ste. 104, Cincinnati, OH 45227.

7. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

9. The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint was directed to this judicial District. Specifically, Defendant called Plaintiff on cellular telephone number with a California area code 323 (Los Angeles, California is an area served by the 323 area code) concerning real property located in California.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case was directed to this District.

11. Defendant is subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through its telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…." Telephone Consumer

Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. Specifically, the TCPA restricts telephone solicitations (i.e., telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, auto dialers, and voice messaging systems – principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

14. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

15. As of October 16, 2013, unless the recipient has given prior express written consent,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Require that solicitors provide their name, the name of the person or

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

3
**CLASS ACTION COMPLAINT**

entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.
- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.
- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

16. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); Birchmeier v. Caribbean Cruise Line, Inc., 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

17. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## FACTUAL ALLEGATIONS

18. Upon information and belief, Kai Data operates a data mining system, along with a powerful autodialing system, which it packages together and markets to real estate businesses throughout the country.

19. Essentially, Kai Data scrapes the Internet for names and phone

numbers of people who have listed their homes for sale, including (1) For Sale By Owner, (2) For Rent By Owner, (3) Expired Listings. *See,* Exhibit A.

20. Kai Data then loads all these names and numbers into their database, and markets this database to real estate agents and brokers who are searching for leads to contact.

21. Going one step further, Kai Data also gathers community-wide information with a feature called "Neighborhood Search", to enable real estate agents and brokers to contact the neighbors of these listings, to create 'buzz' regarding an open house in the neighborhood, or to 'farm' the buyers and sellers in any given area. *See,* Exhibit A.

22. On that same platform, Kai Data also provides these real estate agents and brokers with a powerful dialing system - called the Vulcan 7 Dialer – to call the phone numbers gathered by Kai Data.

23. Subscribers of Kai Data pay a monthly subscription fee to be given access to Kai Data's platform, from where they use Kai Data's dialer to call the phone numbers scraped by Kai Data from the Internet and stored in Kai Data's database.

24. Using "Neighborhood Search" a Kai Data subscriber can highlight an entire block or other geographical area, and the Kai Data system will gather the phone numbers of the individuals residing within the selected area, presenting those phone numbers to the subscriber to be called using Kai Data's Vulcan 7 Dialer.

25. Kai Data also enables its subscribers to record and save pre-recorded voice messages to be left on the answering machines of those individuals who did not answer the calls placed to them.

26. When subscribers of Kai Data wish to call the telephone numbers stored in the Kai Data database, they press a button and answer a call from Kai Data.

27. The Vulcan7 system then commences automatically calling the phone

numbers stored in the Kai Data database, in an effort to connect the real estate agent with potential leads of individuals who are interested in the services of such an agent.

28. When the call is not answered, the Vulcan 7 Dialer will play the pre-recorded voice message stored in the Kai Data system, before moving on to call the next phone number stored in that system.

29. Subscribers using Kai Data's Vulcan7 Dialer cannot and do not use the dialer to call phone numbers other than the phone numbers gathered by Kai Data and stored in the Kai Data database.

30. Kai Data controls how often the Vulcan7 Dialer may be used to contact telephone numbers stored in its database.

31. Kai Data makes zero effort to obtain the express, written consent of the individuals being called, before adding that individual's phone number to its database to be called by the legions of Kai Data subscribers seeking to make a new sale or contact a new lead.

32. Kai Data makes zero effort to obtain any consent whatsoever from these individuals, before adding their phone numbers to the Kai Data database and presenting those numbers to be called by Kai Data subscribers.

33. Upon information and belief, Defendant does not have an Internal Do Not Call database for individuals who tell Kai Data subscribers to stop calling them.

34. In Kai Data's overzealous attempt to market its services as an all-in-one lead generator and dialing system, Defendant knowingly placed (and continues to make) automated telemarketing phone calls and pre-recorded messages without the prior express written consent of the call recipients. As such, Kai Data not only invaded the personal privacy of Plaintiff and the members of the Classes, but also intentionally and repeatedly violated the TCPA.

**FACTUAL BACKGROUND AS TO PLAINTIFF**

35. Sometime prior to 2010, Plaintiff was assigned, and became the owner of a cellular telephone number of 323-333-XXXX.

36. In or around June of 2019, Defendant added the Plaintiff to its database, having scraped the Plaintiff's contact information from the Internet.

37. As a result, Plaintiff started being bombarded with incessant calls, text messages and pre-recorded voice messages from Kai Data subscribers, using Kai Data's Vulcan7 dialing system to call the phone numbers gathered by Kai Data.

38. Plaintiff received calls where real estate agents working in at least three different real estate companies, including Remax Real Pros, Mainstreet Realtors and Century 21 desired to contact Plaintiff.

39. One of the pre-recorded messages, left on a voicemail, beginning after a two second pause, stated:

> "Hi I was calling about your home that was for sale. I am wondering if its still available or if its been sold. If you could call me back I would appreciate it. My name is Jason Lopez and my number is area code 626-926-2702. Thank You."

40. Another one of the pre-recorded messages, left on a voicemail, beginning after a three second pause, stated:

> "Hi I noticed that your home recently came off the market and I have some interest in your home. I have some unique marketing ideas that nobody else is using right now that I would like to share with you, so please call me 909-800-7264 that is 909-800-7264 at your earliest convenience."

41. A third one of the pre-recorded messages, left on a voicemail, beginning after a three second pause, stated:

> "Hi my name is Valerie from C21 Plaza. I am sure you figured out that your home came up on our computer as an expired listing. And I was calling to see if you are familiar with the techniques that I use to

sell homes in the quickest time possible. I would love to sit down with you. Please when you get a chance call me back, my number is 818-425-9618 again that is 818-425-9618. Thanks have a great day."

42. On information and belief, and based on the circumstances as described above, Defendant placed one or more pre-recorded voice messages to the Plaintiff and called the Plaintiff using an Automatic Telephone Dialing System.

## LEGAL CLAIMS

43. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

44. Plaintiff did not provide Defendant prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

45. Upon information and belief, the automated dialing system used by Defendant has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

46. Upon information and belief, the automated dialing system also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

47. Defendant's telephonic communications were made to a telephone number assigned to a cellular telephone service for which Plaintiff pays for wireless telephone services, pursuant to 47 U.S.C. § 227(b)(1).

48. Plaintiff was personally affected by Defendant's aforementioned conduct because Plaintiff was frustrated and distressed that Defendant frequently annoyed Plaintiff with several unwanted marketing calls to Plaintiff's personal cell phone.

49. Defendant's telephonic communications forced Plaintiff and other similarly situated class members to live without the utility of their cellular phones

because they were occupied with automated and prerecorded calls, causing annoyance and lost time.

50. The calls and pre-recorded voice messages Defendant placed to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1).

51. Plaintiff has reason to believe that Defendant has called and placed pre-recorded voice messages to thousands of wireless telephone customers to market its products and services without consent and/or after consumers revoked their consent in a reasonable manner.

52. In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of herself and the Classes of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cellular phones.

53. On behalf of Plaintiff and the Classes, Plaintiff seeks an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

54. Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the Classes, which include:

    a. "The Pre-Recorded Voice Message Class", consisting of all individuals in the United States who were called by Defendant or its agent/s and/or employees, with an artificial or prerecorded voice message to the individual's cellular telephone, within the four years prior to the filing of the Complaint.

    b. "The Phone Call Class", consisting of all individuals in the United States who were called by Defendant or its agent/s and/or employees, through use of the Vulcan 7

Dialer, to the individual's cellular telephone, within the four years prior to the filing of the Complaint.

55. Plaintiff reserve the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

56. Plaintiff and the Class members were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Classes via their cellular telephones by using an ATDS and pre-recorded voice messages, thereby causing Plaintiff and the Classes to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid; and Plaintiffs and Class members' privacy was invaded.

57. The exact size of the Classes is presently unknown but can be ascertained through a review of Defendant's records, and it is clear that individual joinder is impracticable. Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes.

58. There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

59. Common questions for the Classes include, without limitation:
    a. Whether Defendant made phone calls to consumers using any automatic dialing system to any telephone number assigned to a cellular phone service;
    b. Whether the calls were placed for marketing or solicitation purposes;
    c. Whether Defendant obtained prior express written consent to place the calls;

**CLASS ACTION COMPLAINT**

   d. Whether Defendant placed pre-recorded voice messages to any telephone number assigned to a cellular phone service;

   e. Whether Defendant's conduct violated the TCPA;

   f. Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct;

   g. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

60. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

61. Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions.

62. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

63. This class action is appropriate for class certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole.

64. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

65. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

66. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class and Subclass definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

67. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

68. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct.

69. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

70. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227

71. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

72. Defendant placed unsolicited and unauthorized pre-recorded voice messages and calls, using an ATDS, to Plaintiff's and the Class members cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Class.

73. Defendant placed these calls and pre-recorded voice messages without the consent of the individuals being called.

74. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

75. Defendant made unsolicited and unauthorized calls to Plaintiff for the purpose of marketing products and/or services to those Plaintiffs and the Class.

76. Defendant's conduct invaded Plaintiff's privacy and the privacy of the class members.

77. As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

78. Because Defendant had knowledge that Plaintiff and the Class never gave express prior consent to be called, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the Classes.

79. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully request the following relief:

    a. An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel.

    b. An award of statutory damages for each and every negligent violation to each member of the Classes pursuant to 47 U.S.C. § 227(b)(3)(B);

    c. An award of statutory damages for each and every knowing and/or willful violation to each member of the Classes pursuant to 47 U.S.C § 227(b)(3)(B);

    d.   Injunctive relief prohibiting Defendant's conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A);

    e.   Pre-judgment and post-judgment interest on monetary relief;

    f.   Costs of suit;

    g.   Reasonable attorneys' fees pursuant to, *inter alia*, the common fund doctrine; and

    h.   All other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

80. Pursuant to the eleventh amendment to the Constitution of the United States of America, Plaintiff and the Class are entitled to, and demand, a trial by jury.

Dated: February 2, 2021           **KAZEROUNI LAW GROUP, APC**

                                           By: */s/ Abbas Kazerounian*
                                               Abbas Kazerounian, Esq.
                                               *Attorneys for Plaintiff*

**Additional Plaintiff's Counsel**
**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6806
Facsimile: (800) 520-5523