JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-971 JGB (SHKx)** | Date | June 23, 2021 |
|---|---|---|---|
| Title | *Eta Tikotzky v. Kai Data, LLC* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 28); and (2) VACATING the June 28, 2021 Hearing (IN CHAMBERS)

Before the Court is a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Kai Data, LLC. ("Motion," Dkt. No. 28.)  The Court determines this matter is appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS Defendant's Motion.  The June 28, 2021 hearing is VACATED.

## I.   BACKGROUND

On February 2, 2021, Plaintiff Eta Tikotzky filed a Complaint against Defendant, which she amended on April 2, 2021.  ("Complaint," Dkt. No. 1; "FAC," Dkt. No. 24.)  The FAC alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of a putative class.  (FAC.)

On April 30, 2021, Defendant filed this Motion.  (See Motion.)  Plaintiff filed her Opposition on May 29, 2021.  ("Opposition," Dkt. No. 29.)  Defendant replied on June 11, 2021.  ("Reply," Dkt. No. 31.)

## II.   FACTUAL ALLEGATONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this motion.

Defendant Kai Data operates and markets a data mining system which is packaged with an autodialing system known as "Vulcan 7." (FAC ¶ 22.) Defendant also scrapes the Internet for names and telephone numbers of people who have listed their homes for sale. (Id. ¶ 23.) After Defendant obtains names and telephone numbers, it loads that data into its database, making it available for use via robocalls made with Vulcan 7. (Id. ¶ 24.) Defendant's system is able to automatically call the telephone numbers stored in its database. (Id. ¶ 26.)

The Vulcan 7 system is also able to record and save pre-recorded messages that can be left as voicemails. (Id. ¶ 27.) If individuals receiving calls do not answer the calls, the Vulcan 7 system plays a pre-recorded voicemail stored in the Kai Data system based on Kai Data's configuration of the system. (Id. ¶ 28.) The Vulcan 7 is marketed to be used to call the telephone numbers gathered by Defendant; it is not generally used to place calls to phone numbers from other sources. (Id. ¶ 29.) Defendant does not obtain the express written consent of individuals before adding their telephone numbers to its database. (Id. ¶ 30.) Instead, Defendant uses a system where consumers must affirmatively remove their phone numbers from its database. (Id. ¶ 35.) Defendant knows its system is heavily used to place unsolicited prerecorded voice messages to consumers. (Id. ¶ 40.)

In or around June 2019, Plaintiff "started being bombarded with incessant calls, text messages and pre-recorded voice messages all related to assisting her with the sale of her home." (Id. ¶ 42.) Some of the calls she received were pre-recorded. (Id. ¶ 46.)

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15–05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV. DISCUSSION

The TCPA prohibits robocalls. See 47 U.S.C. § 227. Section 227(b)(1)(A) of the statute prohibits "mak[ing] any call" using an automated dialing system or prerecorded voice to certain recipients, including emergency services, hospitals, hotels, and services where parties are charged for phone calls. Section 227(b)(1)(B) of the statute prohibits "initiat[ing] any telephone call" to a residential phone using an automated dialing system or prerecorded voice without prior express consent. "The plain language of the statute assigns civil liability to the party who 'makes' a call." Thomas v. Taco Bell Corp, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), aff'd, 582 F. App'x 678 (9th Cir. 2014). "For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." Abante Rooter & Plumbing v. Farmers Group, Inc., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018). Additionally, common carriers are generally not subject to liability under the TCPA. Rinky Dink, Inc. v. Elec. Merch. Syst., 2015 WL 778065, at *1 (W.D. Wash. Feb. 24, 2015)

At core, Defendant's Motion argues that Defendant does not "make any calls"—Kai Data is a common carrier which provides infrastructure for others to make robocalls, but Defendant itself does not "make" calls under the meaning of the TCPA. (Motion 21.) In support, Defendant points to allegations from Plaintiff's Compliant that have been edited out of the supplanting FAC. (Id. 18.) For example, the original Complaint alleges that Defendant has relationships with "subscribers," who can import their own contacts into the Vulcan 7 dialing system. (Id. 12 n.3 (citing Complaint).) Indeed, the original Complaint is full of references to subscribers. In it, Plaintiff alleged that:

> Kai Data . . . markets [its] database to real estate agents and brokers who are searching for leads to contact. . . . [It] also gathers community-wide information with a feature called "Neighborhood Search", to enable real estate agents and brokers to contact the neighbors of these listings, to create 'buzz' regarding an open house in the neighborhood, or to 'farm' the buyers and sellers in any given area. On that same platform, Kai Data also provides these real estate agents and brokers with a powerful dialing system—called the

>Vulcan 7 Dialer—to call the phone numbers gathered by Kai Data. Subscribers of Kai Data pay a monthly subscription fee to be given access to Kai Data's platform, from where they use Kai Data's dialer to call the phone numbers scraped by Kai Data from the Internet and stored in Kai Data's database. Using "Neighborhood Search" a Kai Data subscriber can highlight an entire block or other geographical area, and the Kai Data system will gather the phone numbers of the individuals residing within the selected area, presenting those phone numbers to the subscriber to be called using Kai Data's Vulcan 7 Dialer. Kai Data also enables its subscribers to record and save pre-recorded voice messages to be left on the answering machines of those individuals who did not answer the calls placed to them. When subscribers of Kai Data wish to call the telephone numbers stored in the Kai Data database, they press a button and answer a call from Kai Data.

(Complaint ¶¶ 21-26.) In comparison, the FAC alleges:

>Kai Data scrapes the Internet for names and telephone numbers of people who have listed their homes for sale, including (1) For Sale By Owner, (2) For Rent By Owner, (3) Expired Listings. Kai Data then loads all these names and telephone numbers into their database to be robocalled using its sophisticated Autodialer. Kai Data's "Neighborhood Search" feature enables its system to gather the telephone numbers of individuals residing within a selected geographical area to be autodialed. Defendant's system is able to automatically call the telephone numbers stored in its database.

(FAC ¶¶ 23-26.) Plaintiff has shifted her allegations to obscure the identity of the offending callers; she has eliminated any reference to Kai Data's realtor clients. Whereas the Complaint alleges that subscribers of Kai Data record and save voice messages on consumers' voicemails, the FAC alleges only that the Kai Data system loads numbers "to be robocalled" or "to be autodialed."

The two Complaints also differ in the way they treat voice messages left on Plaintiff's cell phone. The original Complaint alleged that Plaintiff received voice messages from "three different real estate companies, including Remax Real Pros, Mainstreet Realtors and Century 21" who reached Plaintiff by use of Defendant Kai Data's Vulcan 7 dialing system. (Complaint ¶¶ 37-42.) Plaintiff transcribes the voicemails in the Complaint. (Id.) By contrast, in the FAC, Plaintiff alleges only that she received "incessant" pre-recorded voicemails regarding the sale of her home. (FAC ¶ 42.) She describes one such message, left by a caller named Paul, "[b]y way of example only," but then appears to claim that Defendant directly made this call. (Id. ¶¶ 43, 49-50.) The FAC goes on to describe a second voicemail, this time left by a caller named Alex, but also does not allege that Defendant made the call. (Id. ¶ 45.) However, in an about-face, the FAC also states that "[u]pon information and belief, Defendant placed one or more of these pre-recorded voice messages to the Plaintiff." (Id. ¶¶ 49-50.)

The Court must first decide whether facts alleged in the Complaint but not included in the FAC serve as judicial admissions. Of course, at this stage, all well-pleaded allegations in the

FAC are taken as true. But this requirement is not inconsistent with Defendant's suggested approach, as explained below.

Plaintiff opposes Defendant's argument by quoting the Court in <u>McCrary v. Elations Co., LLC</u>, which explains that "an amended pleading supersedes earlier pleadings, such that statements in earlier pleadings are not admissions." 2014 WL 1779243, at *4 (C.D. Cal. Jan. 13, 2014). This is generally true. However, <u>McCrary</u> continues to explain that the Federal Rules of Civil Procedure do not prevent parties from filing successive pleadings that make inconsistent or contradictory allegations because at "'the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged[.]'" <u>Id.</u> (quoting <u>PAE Gov't Servs., Inc. v MPRI Inc.</u>, 514 F.3d 856, 858-59 (9th Cir. 1995)). This rationale is key. After filing a complaint, plaintiffs generally learn more information about the facts which give rise to their causes of action. Amendment exists, in part, to accommodate this fact. The general rule that plaintiffs are not held to facts alleged in supplanted complaints springs from the idea that as civil litigation unfolds, both the facts and law become clearer. Further, at the motion to dismiss stage, facts pleaded in the operative complaint are assumed to be true, so if there exist facts in an operative complaint which contradict facts in a supplanted complaint, the supplanted facts control.

This case presents a different scenario. Plaintiff filed her Complaint against Kai Data alleging that its Vulcan 7 dialing program enabled third-party realtors to leave robocall voice messages on consumers' cell phones. (Complaint.) Upon reading Defendant's motion to dismiss the original Complaint, (<u>see</u> Dkt. No. 20,) Plaintiff filed an Amended Complaint. (FAC.) But Plaintiff's FAC does not contradict or make allegations which are inconsistent with those in the Complaint—it merely deletes all references to third-party realtors using Defendant's Vulcan 7 program to make calls, instead substituting language that the system loads numbers "to be robocalled" or "to be autodialed." (FAC ¶¶ 23-26.)

The Court joins others with the District to hold that where allegations in operative pleadings do not contradict earlier pleadings, but instead merely omit previously-pleaded material which harms a plaintiff's case—such allegations are judicial admissions that a plaintiff has not cured. See <u>Jackson v. Loews Hotels, Inc. Jackson</u>, 2019 WL 6721637, *3 (C.D. Cal. July 24, 2019); <u>see also</u> <u>In re YogaWorks, Inc. Sec. Litig.</u>, 2020 WL 2549290, at *3 (C.D. Cal. Apr. 23, 2020) ("Plaintiff cannot avoid application of the statute of limitations by simply deleting from its amended complaint allegations evidencing that it discovered or should have discovered the factual basis of its securities claim more than one year before it filed the complaint.").

Accordingly, Plaintiff has not plausibly alleged facts which, if true, would subject Kai Data to liability under the TCPA. Though Plaintiff has alleged that upon information and belief, Defendant left the voice messages from Paul and Alex, (FAC ¶¶ 50-51,) this is implausible given the admissions in the Complaint detailing Defendant's business model as a common carrier—a technology service which enables others to make robocalls but does not itself make such calls. Plaintiff has also not alleged any facts which suggest that Defendant has an agency relationship with its subscribers.

## V.   CONCLUSION

For the reasons above, the Court GRANTS Defendant's Motion.  Plaintiff's FAC is DISMISSED WITH PREJUDICE.  The Clerk is directed to close the case.  The June 28, 2021 hearing is VACATED.

**IT IS SO ORDERED.**